# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

COREY D. CLARK,                      )
JAERED N. ANDREWS,                   )
DERRELL BRITTENUM and                )
TERRELL BRITTENUM,                   )          CASE NO. 3:12-0675
                                     )          Chief Judge Haynes
    Plaintiffs,                   )
                                     )
v.                                   )
                                     )
VIACOM INTERNATIONAL, INC.,          )
VIACOM MEDIA NETWORKS,               )
MTV NETWORKS ENTERPRISES,            )
INC., JIM CANTIELLO and              )
JOHN DOES 1-20,                      )
                                     )
    Defendants.                   )

## M E M O R A N D U M

Plaintiff, Corey D. Clark, a Tennessee citizen, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants: Viacom International, Inc., Viacom Media Networks, MTV Networks Enterprises, foreign corporations, and Jim Cantiello, a citizen of New York. Plaintiff asserts claims for libel and defamation arising out of Defendants' published statements about Plaintiff's disqualification from the *American Idol* television program.

In earlier proceedings, the Defendants filed a motion to dismiss (Docket Entry No. 16) to which Plaintiff responded with his first amended complaint adding allegations and claims. The Defendants renewed their motion to dismiss and Plaintiff moved to file a second amended complaint (Docket Entry No. 54) with additional Plaintiffs, that the Court granted (Docket Entry No. 56). See Local Rule 7.01(b). In the second amended complaint, Plaintiff adds three Plaintiffs and assert

1

claims for false light invasion of privacy; commercial disparagement; right of publicity; and negligent hiring or retention.

Before the Court is the Defendants' motion to reconsider (Docket Entry No. 58) the Order granting Plaintiff's motion for leave to file a second amended complaint. In essence, Defendants contend that the proposed second amended complaint includes claims for twenty-one (21) alleged libelous statements that are clearly time barred under Tennessee's applicable one-year statute of limitations and applicable Tennessee law.

## A. Analysis of the Second Amended Complaint

According to the second amended complaint, on March 31, 2003, the Defendants' agents disqualified Corey Clark from the televised singing competition *American Idol* after "The Smoking Gun" website published a story about Clark's October 12, 2002 criminal arrest in Topeka, Kansas. (Docket Entry No. 55, Second Amended Complaint at ¶¶ 290, 292). Fox television network and *American Idol* producers allegedly reported that Clark's disqualification from "American Idol" was based upon Plaintiff's withholding information about his arrest. Id. ¶ 309. Plaintiff's original complaint alleged three defamatory statements on July 5, 2011, and two on May 21, 2007 on MTV's Internet website. Id. at ¶¶ 164, 204. On October 2, 2012, Plaintiff's amended complaint added three statements published by Defendants on July 5, 2011. (Docket Entry No. 20 at ¶ 485).

Plaintiffs' second amended complaint allege twenty-seven (27) libelous statements published by Defendants on the Internet against them. (Docket Entry No. 55, Exhibit A). Of these statements, five were published on or after July 5, 2011. Id. In addition, the second amended complaint adds Plaintiffs who were also disqualified from the *American Idol* television show. Jaered Andrews, an additional Plaintiff, is also a former contestant who was disqualified from the *American Idol* show

2

in 2003, and he alleges that Defendants libeled him with five statements. Id. at Exhibit B. Andrews's disqualification arose from his cited involvement in a November 2002 bar fight that ended with a man's death. Id. ¶¶ 526-27. Plaintiff Andrews alleges a libelous statement published within the one-year is the statement that he "was sent home over undisclosed assault charges." Id. at ¶ 812). On February 5, 2004, the New York Post reported that "Last season . . . Jaered Andrews made it to the finals, but was booted when officials learned he'd been arrested on assault charges connected to a bar fight in which a man died." Id. at ¶ 527.

Plaintiffs Derrell and Terrell Brittenum were also contestants on *American Idol* and were disqualified in 2006. Id. ¶ 544. On October 30, 2005, Terrell Brittenum was arrested in Shelby County, Tennessee for driving a stolen car and was charged with theft of the stolen vehicle. Id. ¶¶ 545, 547. On or about November 2, 2005, Shelby County prosecutors charged Terrell Brittenum as a "Fugitive from Justice." Id. ¶ 548. On January 10, 2006, Terrell Brittenum was arrested by Shelby County police on a "governor's warrant" from Georgia in connection with the stolen vehicle. Id. ¶¶ 571-72. On January 17, 2006, U.S. news media reported that Terrell Brittenum was being held in Shelby County Jail and that his brother Derrell was a "fugitive on the run." Id. ¶ 578. Derrell Brittenum reported to the police department in Atlanta, Georgia. Id. ¶ 584. On January 22, 2006, the Brittenums were disqualified from *American Idol* in connection with their arrests. Id. ¶ 588. The Brittenums joined as parties in this action on February 23, 2013, citing two libelous statements, neither of which was published within one year of the Brittenums being named as parties to this action. Id. at Exhibit C.

## B. Conclusion of Law

A motion to amend a complaint can be denied, if the proposed amended complaint presents

3

claims that are futile. <u>Courie v. Alcoa Wheel & Forged Products</u>, 577 F.3d 625, 633 (6th Cir. 2009). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. <u>Rose v. Hartford Underwriters Ins. Co.</u>, 203 F.3d 417, 420 (6th Cir. 2000). A plaintiff's failure to meet the statute of limitations is an appropriate basis to deny a motion to amend.

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.

<u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007).

Plaintiff's libel and related claims are governed by Tenn. Code Ann. § 28-3-104(a)(1) that provides a one-year limitations period and a defamation claim accrues "upon the date the alleged defamatory language was published." <u>Riley v. Dun & Bradstreet</u>, 172 F.2d 303, 308 (6th Cir. 1949). Tennessee adopts the single publication rule, namely that a plaintiff's libel or defamation claim accrues only once, at the time of publication, and later publications do not give rise to a separate defamation claim. <u>Milligan v. United States</u>, 670 F.3d 686, 698 (6th Cir. 2012).

In <u>Applewhite v. Memphis State Univ.</u>, 495 S.W.2d 190, 194 (Tenn. 1973), the Tennessee Supreme Court formally adopted the single publication rule with respect to alleged libelous statements of "widespread circulation." <u>Applewhite</u> held that "[t]o permit a separate suit to be brought in regard to the sale or delivery of every single copy of a modern publication would be inconceivable and intolerable." <u>Id.</u> at 193-94. In a word, "a plaintiff has only one cause of action on a widespread circulation of a libelous matter" and the statute of limitations runs from the date of original publication. <u>Id.</u> at 194.

The single publication rule applies to information published on the Internet. <u>See</u>

4

In re Philadelphia Newspapers, LLC, 690 F.3d 161, 174 (3d Cir. 2012), as corrected (Oct. 25, 2012), cert. dismissed, 133 S. Ct. 1001 (U.S. 2013) (holding that there is "no rational basis upon which to distinguish publication of a book or report through traditional printed media and publication through electronic means," and that "[w]e believe that Pennsylvania courts would extend the single publication rule to publicly accessible material on the Internet."); Roberts v. McAfee, Inc., 660 F.3d 1156, 1169 (9th Cir. 2011) (applying the single publication rule to material posted on the Internet); Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 139 (5th Cir. 2007) (noting that "every case to consider the issue has applied the single publication rule to publicly available Internet articles."); see also Mitan v. Davis, 243 F. Supp. 2d 719, 724 (W.D. Ky. 2003) ("After carefully examining the issue, we can find no basis for treating defamatory Internet communication differently than any other form of aggregate communication."). As a leading treatise observed:

> The single publication rule applies to electronic postings, including those on the Internet. Despite the continued public availability – some would call it the repeated publication – of such material, there is a single publication at the time the posting is made, and the statute of limitations begins to run then.

Sack on Defamation: Libel, Slander, and Related Problems § 7:2.2.

Here, Clark's claims involve alleged defamatory statements that were published prior to July 5, 2011. The alleged defamatory statements cited by Plaintiffs Andrews and Brittenums were published prior to February 23, 2012 (one year before they joined as parties to the Second Amended Complaint), are barred by Tennessee's one-year statute of limitations for libel. The Court concludes that to add these claims in the second amended complaint is futile.

Plaintiffs rely upon Swafford v. Memphis Individual Practice Assn., 1998 WL 281935, (Tenn. Ct. App. June 2, 1998) as "controlling" on the timeliness of their claims. Plaintiffs argue that

5

Swafford "expressly rejected the 'single publication rule' as it applies to defamatory internet-based publications." (Docket Entry No. 40, Plaintiffs' Motion for Partial Summary Judgment at 9). In Swafford, a doctor filed a libel suit against a health maintenance organization for its alleged false report of his termination to the National Practitioner Data Bank – a private data bank on physicians that health care entities only access. Id. at *1. The doctor cited the Data Bank's statements about his status to three hospitals and asserted a libel claim for each report. Id. at *5. The issue in Swafford was "[w]hether the single publication rule should be applied to the dissemination of alleged defamatory information in the Data Bank to health care providers." Id. at *5. The Tennessee Court of Appeals cited Applewhite for the proposition that the single publication rule applies in Tennessee to "aggregate communication[s]" such as "the mass publication of a book, magazine, or television commercial." Id. at *5, 8.

Yet, the Tennessee Court of Appeals did not consider the three reports to be an "aggregate communication" or "mass publication" under the single publication rule that was inapplicable. Id. at *8. Rather, the Tennessee Court of Appeals deemed the three responses to be separate and distinct publications of alleged defamatory material analogous to "action[s] arising out of an allegedly defamatory statement in a credit report." Id. at *6. For this distinction, the Court cited "the confidential nature of a credit report necessarily means that each new issuance results in a distinct and separate injury." Id. Thus, that Court concluded as follows:

> The facts in this case are analogous to the facts in the above credit report decisions. Unlike the mass publication of a book, magazine, or television commercial, it is unlikely that more than a handful of individuals or entities would gain access to information stored in the data base. Unlike Applewhite, the information stored in the Data Bank is not within the domain of the "contemporary publishing world." In addition, the health care entities in this case, like the entities accessing credit information, requested information from the Data Bank on separate and distinct

6

> occasions. Therefore, there is no **"aggregate** publication" as contemplated in cases applying the single publication rule. While information in the Data Bank may be accessed by several entities, the justification for the single publication rule, a vast multiplicity of lawsuits resulting from a mass publication, is simply not present here. Under the facts of this case, we hold that the single publication rule is inapplicable. Therefore, a separate limitations period attaches to each publication.

Id. at *8 (internal citation omitted) (emphasis in original). Yet, that court made clear that "[w]e do not address a situation in which the information in the Data Bank could be accessed by the general public." Id. at *8 n.8.

The Court concludes that Plaintiffs' reliance on Swafford is misplaced. As Swafford expressly disclaimed such a broad interpretation of its holding. "We do not address a situation in which the information in the Data Bank could be accessed by the general public." Id. at *8 n.8.

Plaintiffs next argue that certain non-substantive modifications to the Defendants' websites at issue constitute "republication" so that the statute of limitations commences anew upon "republication." Yet, Plaintiffs earlier conceded the absence of substantive material to the alleged defamatory articles: "the actual text of the defamatory articles remains unchanged from the original date of publication." (Docket Entry No. 20, Plaintiffs' Motion for Partial Summary Judgment at 20). In any event, courts have rejected this republication argument. See In re Philadelphia Newspapers, LLC, 690 F.3d at 175 (noting that "[w]ebsites are constantly linked and updated," and that "[i]f each link or technical change were an act of republication, the statute of limitations would be retriggered endlessly and its effectiveness essentially eliminated."); Roberts v. McAfee, Inc., 660 F.3d 1156, 1169 (9th Cir. 2011) (holding that republication does not arise from continuing alleged defamatory information on a website); Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1055 (D.N.D. 2006) (rejecting republication argument where modification "did not change the content or substance of the [alleged defamatory] website."). As a leading treatise observed, "[m]odifications of a website, such as

7

minor changes or addition of material irrelevant to the allegedly defamatory material, or changes in the manner in which the material may be accessed, do not ordinarily constitute a new publication." Sack on Defamation: Libel, Slander, and Related Problems § 7:2.1.

As to Plaintiffs' reliance upon the "continuing defamation" doctrine, in 2008 the Tennessee Court of Appeals held that "Tennessee courts have never recognized a 'continuing defamation'" and that "this Court has previously commented on the dubiousness of the very concept of a 'continuing defamation.'" Rose v. Cookeville Reg'l Med. Ctr., 2008 WL 2078056, *5 (Tenn. Ct. App. May 14, 2008); see also Ward v. Knox County Bd. of Educ., 869 F. Supp. 2d 860, 870 (E.D. Tenn. 2012) (holding that "Tennessee courts have never recognized a 'continuing defamation.'").

## Conclusion

For these reasons, this Court concludes that the Defendants' motion to reconsider (Docket Entry No. 58) should be granted and the Order (Docket Entry No. 56) allowing the filing of the second amended complaint in this action is set aside. The Court will assess separately Clark's first amended complaint that the Defendants also challenge in their motion to dismiss (Docket Entry No. 24) that is reinstated.

An appropriate Order is filed herewith.

ENTERED this the 26 day of March, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

8